*J. T. Mann, R. S. Roddenbery Jr.,* and *H. A. Peacock,* for plaintiffs.

*Milner & Farkas,* for defendant.

---

## BENSON BROTHERS COMPANY *v.* JOHNSON *et al.*

1. An instrument in writing was introduced in evidence in this case, which by its terms may be a contract of rental; but looking to the real purpose of the instrument and considering the entire writing, it is evident that it is a conditional sale; and when the party to whom the property was to be conveyed upon making the payments stipulated in the writing actually paid the instalments of the purchase-price as they fell due, he acquired an interest in the property, and when he sought to surrender the instrument to the maker with the intent that the latter should convey to his brothers, who are non-residents of this State, creditors of the lessee, as he is called, who are pressing their claims to judgment, are entitled to relief in a court of equity to prevent a fraudulent transfer.

2. The court should have granted the interlocutory injunction, and erred in refusing it.

No. 5657. December 15, 1926. Rehearing denied January 15, 1927.

Contracts, 13 C. J. p. 525, n. 41; p. 543, n. 32.
Fraudulent Conveyances, 27 C. J. p. 432, n. 62; p. 716, n. 55.
Injunctions, 32 C. J. p. 151, n. 96.
Vendor and Purchaser, 39 Cyc. p. 1175, n. 4; p. 1577, n. 97.

Petition for injunction. Before Judge Wood. Cobb superior court. August 7, 1926.

Two suits upon notes were filed, one against R. H. Johnson individually, and the other against him and his mother, Mrs. M. E. Johnson. Later the plaintiffs filed an application for injunction in aid of these suits, against the Johnsons and J. R. Fowler, upon which the presiding judge granted a temporary restraining order, but which he dissolved upon the hearing later on; and this judgment is now under review. Fowler was made a party to the litigation, and answered.

It appears that while the notes sued on were in existence J. R. Fowler caused an execution from a judgment against R. H. Johnson and his father (then deceased), which had been transferred to him, to be levied upon certain land as the property of the estate of the deceased. The land was regularly advertised and sold at sheriff's sale, and was bid in by Fowler, plaintiff in fi. fa., and the sheriff executed to him a deed. These facts are all admitted. Plaintiffs in error also admitted that J. R. Fowler purchased said property when it was sold as the property of J. T. Johnson, deceased, and that the title to said property passed into said J. R. Fowler. Fowler then made a contract with R. H. Johnson, which is in part as follows:

"Georgia, Cobb County. This agreement made and entered into by and between J. R. Fowler, of the County of Cobb, as party of the first part, and R. Homer Johnson, of the County of Cobb, as party of the second part. The party of the first part, for and in consideration of the sums hereinafter set forth, does hereby rent to the party of the second part the following described lands, to wit: land lots 731 and 777, containing 40 acres each, more or less, and being in the 16th district and 2nd section of Cobb County, Georgia. Party of the second part agrees to pay party of the first part the customary rent of one third and one fourth of all crops grown on said farm for the year 1924; party of the second part agrees to pay party of the first part the following rental on said property for the succeeding years, to wit: For the year 1925 the sum of $72.00 payable on November 1, 1925; for the year 1926 the sum of $172.00 payable on November 1, 1926; for the year 1927 the sum of $214.00 payable on November 1, 1927; for the year 1928 the sum of $260.00 payable on November 1, 1928; for

the year 1929 the sum of $486.00 payable on November 1, 1929. . . The party of the first part agrees, should the party of the second part pay the several sums of rental set out above on the dates above set out, then he will make the party of the second part a deed of gift to said premises. Both parties hereto agree that this agreement shall in no event be construed as a contract of sale of said premises, nor shall this instrument be construed as a bond for title. Should the party of the second part fail to pay any of said sums of rental on the dates set out herein, then it shall not be necessary for the party of the first part to take any legal steps to recover the possession of said premises, other than is necessary under the laws of this State for a landlord to evict or eject a tenant. And in no event shall the rental payments be construed as purchase-money payments, and in default on any payment of said rental the payment already made shall be for the rent and use of said property. In witness whereof both parties hereto have hereunto set their hands and seals, this —— day of October, 1924." This was signed by the parties and attested.

Evidence in the case shows that the amount that R. H. Johnson was to pay J. R. Fowler was about $1,200, that he has made two payments, and that he gave in said property for taxes for the years 1924 and 1925, and paid the taxes on the land for those years, and then gave in the property for taxes for the year 1926, and is now in possession of the land, living upon the same and cultivating the farm under the contract made with Fowler. Plaintiffs held a note against R. H. Johnson and a note against R. H. Johnson and Mrs. M. E. Johnson. They filed a suit on these notes to the July term, 1926, of Cobb superior court. Afterward . R. H. Johnson transferred his interest under the contract with Fowler to his two brothers, H. N. and Willie Johnson, of Texas, and instructed Fowler that, upon the payment of the amount due by him to Fowler by his brothers, Fowler should make to his brothers deeds to the property. Fowler agreed to do this, upon their complying with the contract.

Plaintiffs at once filed an equitable amendment to their suit, and prayed the court to enjoin Fowler and R. H. Johnson from transferring the property or in any wise encumbering it until further order. The case came up for an interlocutory hearing; and after evidence was submitted, the court passed an order dis-

solving the restraining order theretofore granted. To this judgment the plaintiffs excepted, insisting that the court erred in refusing to grant an injunction; that under the contract between Fowler and Johnson the latter had an equity in the property; that the evidence showed this equity to be worth $2,000, that Johnson was attempting to transfer his property to his brothers in order to prevent its becoming subject to any judgment that might be rendered against him; that Johnson had a contract with Fowler, a compliance with the terms of which by Johnson would entitle him to a deed from Fowler; that the wording of the contract was for the purpose of preventing the property from being subject to the debts of Johnson which he owed at the time the contract was made; that the attempt by Johnson to transfer his interest in the contract to his brothers while he still remained in possession of the property was an attempt to evade the payment of plaintiffs' debt, and was a fraud as against them.

*B. T. Frey* and *J. E. Mozely,* for plaintiffs.

*L. M. Blair* and *Fred Morris,* for defendants.

BECK, P. J. (After stating the foregoing facts.) We are of the opinion that the court should have granted an interlocutory injunction, and have thus held the matters in controversy in statu quo until the issues made under the pleadings and evidence could be determined at a final trial. The contract under which R. H. Johnson went into possession of the land involved in this controversy is set forth in the statement of facts, certain immaterial portions being omitted. It seems to us, notwithstanding the wording of this instrument, that it should be construed as being in effect a conditional sale. It is unnecessary to set forth in this place any of the language of the instrument; it can be read in this connection as it is set forth above. Whether this instrument was a lease, or a sale upon condition that Johnson should make Fowler the payments stipulated, must be determined not merely by the reading of the language employed in framing the contract, but from a consideration of the whole instrument. Thus, though the amounts to be paid are termed "rentals," when we consider the entire instrument it appears that they were instalments of the purchase-price agreed upon by the parties. These instalments increased yearly in amount. For the year 1924 a part of the crop grown upon the place must be paid; for the year 1925 the sum of

$72. The cash payment gradually increased in amount until the amount stipulated to be paid in the year 1929 was $486. And it was agreed by Fowler that when the last payment was made he would make to Johnson "a deed of gift to said premises." True, it is stipulated in words that "this agreement shall in no event be construed as a contract of sale of the land, nor shall it be construed as a bond for title," etc. This last stipulation can not avail to conceal the real nature of the instrument under consideration. A question substantially the same as that which we have before us was decided by this court in the case of *Hays* v. *Jordan,* 85 *Ga.* 741 (11 S. E. 833, 9 L. R. A. 373). And the full discussion of the question there renders unnecessary an elaborate discussion here. In fact a lengthy discussion was scarcely necessary there. The principle upon which we base our ruling has been frequently stated, which is, that in determining the real character of a contract courts will look to its purpose rather than to the name given it by the parties. Hervey *v.* Locomotive Works, 93 U. S. 664, 672 (23 L. ed. 1003). See also the numerous authorities cited in *Hays* v. *Jordan,* supra.

Up to the time that the contract between Fowler and R. H. Johnson was made the property was Fowler's, and title was in him. But when he executed that paper and R. H. Johnson made payments in accordance with the terms thereof, the latter became vested with an interest in the property, and he could not transfer it to his brothers except by a bona fide sale, even by the circuitous method of surrendering the contract to Fowler and having him convey to the brothers of the defendant Johnson. If Fowler thought, and had reasonable ground to think, that Johnson could not comply fully with the contract by making all the payments, and that he might sustain loss in consequence of this failure on the part of Johnson to make future payments, or have other good reasons satisfactory to himself, he would have had the right to accept the surrender of the instrument in question and agree to transfer the title to the brothers of Johnson, if that was necessary to save him from loss. But in this case a court of equity will consider the fact that the plaintiffs offered to pay the balance due under the written contract between Johnson and Fowler if the latter would deed the property to them. No fraud is charged against Fowler; nor is it charged that he is insolvent. Even though innocent of

any fraud, he can not, as against these plaintiffs, be made the means of transferring the title to this property to brothers of the defendant Johnson, who has an interest in the property. We think, therefore, the court should have granted the injunction. Fowler will not be hurt by this; he can be protected by the terms of the injunction. Fowler will not be injured nor suffer loss by this action of a court of equity, but Johnson will be prevented from having the title to the property passed into the hands of his nonresident brothers.

*Judgment reversed. All the Justices concur.*